IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **GOVCONNECTION, INC.,**<br>7503 Standish Pl.<br>Rockville, MD  20855<br><br>and<br><br>**PC CONNECTION, INC.,**<br>730 Milford Road, Merrimack,<br>New Hampshire 03054<br><br>          *Plaintiffs,*<br><br>v.<br><br>**CHRISTOPHER MEREOS,**<br>918 Brick Manor Circle, Silver Spring,<br>Maryland 20905<br><br>          *Defendant.* | Civil Action No. |

## VERIFIED COMPLAINT SEEKING DAMAGES AND INJUNCTIVE RELIEF

NATURE OF ACTION

1.     This action is brought by Plaintiffs PC Connection, Inc. ("PC Connection") and its wholly-owned subsidiary, GovConnection, Inc. ("GovConnection", collectively with PC Connection, "Plaintiffs" or the "Company") to enjoin their former employee, Defendant Christopher Mereos ("Mereos"), from unlawfully disclosing or otherwise using GovConnection's highly confidential and extremely sensitive information that Mereos misappropriated, and to require Mereos to preserve such information.  Plaintiffs also seek their damages resulting from Mereos' unlawful conduct, and reimbursement for the attorneys' fees and costs, which Plaintiffs have been forced to expend in order to protect their rights.

2.     Mereos was employed by GovConnection as an Account Manager at the time of

his voluntary resignation on February 17, 2017. At the time of his resignation, Mereos worked in Rockville, Maryland.

3. In the days and weeks leading up to his voluntary resignation from employment, Mereos unlawfully misappropriated GovConnection's proprietary, confidential and trade secret information concerning among other things, GovConnection's customers, pricing, costs, margins, customer Purchase Orders, quotes, and log in information for portals used by GovConnection to communicate with government customers regarding the specification of orders. Most of this misappropriated information is contained in GovConnection's Customer Relationship Management (CRM) database, CallBack, which is a password protected CRM database to which GovConnection limits access to only those GovConnection employees with a need to know. The disclosure of GovConnection's confidential information by Mereos violates a written agreement between Mereos and GovConnection, common law, and statutory law. Such misappropriation and the potential for disclosure causes severe and irreparable harm to GovConnection.

4. After Mereos' employment ended, GovConnection discovered that Mereos had unlawfully misappropriated GovConnection's proprietary and confidential information. In particular, Mereos had used GovConnection's email system to forward GovConnection's proprietary, confidential, and trade secret information to his unsecure personal email account. Indeed, GovConnection has discovered approximately 400 emails, many of which included attachments that were sent by Mereos to his personal email account in the days and weeks leading to his voluntary resignation. Indeed, most of the emails sent by Mereos to his personal email account do not contain any text and solely consist of an attachment of a confidential GovConnection document (many of which documents were directly uploaded from CallBack). Significantly, many of the documents misappropriated by Mereos did not even contain information

regarding customers with whom he worked while employed by GovConnection. In other words, in the days and weeks leading to his voluntary resignation from employment, it is evident that Mereos was identifying GovConnection's confidential documents and then forwarding such confidential documents to his personal email account for usage outside of the scope of his responsibilities as an employee of GovConnection. There was no lawful business purpose for Mereos to forward this information to his personal email account.

5. Upon information and belief, Mereos remains in possession of these misappropriated files through his personal electronic devices and his personal, cloud-based email account.

6. This action is also brought for the purpose of preserving evidence to be used in connection with the litigation of the claims set forth herein, including Plaintiffs' claims for breach of contract, breach of fiduciary duty, violation of the federal Defend Trade Secrets Act (DTSA) and violation of the Maryland Uniform Trade Secrets Act (MUTSA).

7. Based on the foregoing and for the reasons set forth in more detail below, Plaintiffs request that this Court, as an initial matter, (1) enjoin Mereos from disclosing GovConnection's proprietary/confidential information and trade secrets to any third party either verbally or through the disclosure of documents, otherwise using such information in any manner, including but not limited to opening, downloading, or copying such information, or attaching any device containing such information to another device; (2) order Mereos to immediately provide any personal electronic devices under his control (including any computer, laptop, tablet, storage device, mobile telephone etc.) to an independent computer forensic specialist designated by Plaintiffs, under the supervision and authority of the United States Marshal's Office, for forensic imaging; (3) enjoin Mereos from accessing, transferring or destroying any of GovConnection's

proprietary/confidential information and trade secrets unless ordered to do so by the Court or agreed to by the parties; and (4) find Mereos liable for violating the aforementioned statutes and common law.

## PARTIES

8.  Plaintiff PC Connection is a Delaware corporation with a principal place of business in Merrimack, New Hampshire.

9.  Plaitniff GovConnetion is a Delaware corporation with a principal place of business in Rockville, Maryland.

10. Mereos is a natural person who, upon information and belief, resides at 918 Brick Manor Circle, Silver Spring, Maryland 20905.

## JURISDICTION AND VENUE

11. This is an action in law and equity pursuant to which Plaintiffs seek a temporary restraining order, and preliminary and permanent injunctive relief based on Mereos' breach of contract and other violations of law, including Mereos' violation of the federal DTSA and the MUTSA. Plaintiffs also seek an award of damages and its attorneys' fees.

12. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c) over Plaintiffs' federal claim under the DTSA, 18 U.S.C. § 1831 *et seq.*, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state law claims because those state law claims arise out of the same operative facts as the federal claim.

13. This Court has personal jurisdiction over Mereos because he resides in Maryland, provided services to GovConnection in Maryland, and in connection with his conduct in Maryland, has violated the DTSA, MUTSA, breached certain contractual obligations owing to Plaintiffs, and has caused tortious injury to Plaintiffs, in Maryland.

14. Venue is proper in this district under 28 U.S.C. § 1391(b) because Mereos provided services to GovConnection in this district, and the unlawful acts alleged occurred in this district.

FACTS

**A.     PC Connection and GovConnection**

15. PC Connection was founded in 1982, as the personal computer industry was emerging, to provide customers with a better way to purchase information technology products and services. PC Connection, which is now a publicly traded company, sells computers, software and related products and services nationally to businesses of all sizes and to government agencies. A significant portion of PC Connection's business is the sale of software to a national customer base that includes companies of all sizes, government agencies, non-profits and other organizations. PC Connection is authorized to sell more than 400 software lines. PC Connection has multiple divisions that serve different sectors, including GovConnection, a wholly owned subsidiary which focuses exclusively on government agency customers.

16. Plaintiffs work with current and potential customers to recommend products and services. This process requires extensive interaction between Plaintiffs' employees and their customers and potential customers. Plaintiffs will gather information regarding a potential customer, their needs, budget and future business plans. This information, which is compiled and maintained in Plaintiffs' CRM database, is used to provide recommendations to and complete sales with their customers and potential customers. Many customers purchase products and services on a cyclical basis, so the date of expiration for licensing agreements and/or other cyclical purchase dates is particularly important information that is maintained by Plaintiffs.

17. Plaintiffs' business model relies on the development of long-term customer relationships in which the customers come to rely on the service and advice provided by Plaintiffs. Plaintiffs have been regularly recognized by numerous software providers for their superior sales

strategy. Plaintiffs have invested significant resources in developing the expertise necessary to provide purchasing advice and in a methodology that allows Plaintiffs to provide better advice than their competitors.

18. The Company takes extensive precautions to protect the confidentiality of its information. To this end, the Company requires employees who will have access to the Company's network computers and/or proprietary, confidential and trade secret information to undergo criminal background checks. The Company also mandates that its employees enter into employment agreements that prohibit the disclosure of the Company's proprietary, confidential and trade secret information, and also requires that employees return all of the Company's property after their employment with the Company ends. In addition, the Company employees undergo training regarding the protection of the Company's confidential information, including in particular on the prohibition of using personal email to conduct company business.

**B.     Mereos' Employment With the Company**

19. By letter dated September 23, 2011, Mereos was offered employment with GovConnection as a Sales Support Associate. As set forth in his employment offer letter, Mereos was required to sign and agree to the terms of an "Employee Agreement" ("Agreement") as a condition of his employment. Mereos accepted the employment offer on September 30, 2011 and signed the Agreement on that same day. See Exhibit A.

20. On or about September 30, 2011, Mereos began working at GovConnection in its sales department.

21. In or about early 2013, Mereos' title changed to Account Manager, but he remained in a sales role working with government customers throughout his employment with GovConnection. In particular, Mereos was responsible for initiating sales with potential customers and supporting the completion of sales with interested customers. In his sales role, he had access

6

to confidential information relating not only to sales that he worked on, but also to other employees' sales information through GovConnection's Customer Relationship Management (CRM) database, CallBack. Such information included client contact information, purchase orders and history, customer pricing, margins, renewal dates, and quotes. Mereos had access to all of GovConnection's accounts with government agencies. Mereos was provided with access to this confidential information solely for the purpose of performing his sales responsibilities at GovConnection.

22.    In sum, during his employment and due specifically to his sales position at GovConnection, Mereos had access to extremely sensitive proprietary, confidential and trade secret information of GovConnection, the disclosure of which to third parties would result in substantial and irreparable injury to GovConnection.

**C.    Mereos' Agreement**

23.    On September 30, 2011, Mereos and the Company entered into the Agreement, which set forth certain of the terms of Mereos' employment with the Company. A copy of the Agreement is attached hereto as Exhibit A.

24.    The Agreement, which is governed by New Hampshire law, requires Mereos to maintain the confidentiality of the Company's information:

> Paragraph 2.1. I agree that all Confidential Information, as defined below, which I create or to which I have access as a result of my employment and other associations with the Company is and shall remain the sole and exclusive property of PC Connection. I agree that, except as required for the proper performance of my regular duties for the Company, as expressly authorized in writing in advance by the Company, or as required by applicable law, I will never, directly or indirectly, use or disclose any Confidential Information. I understand and agree that this restriction shall continue to apply after the termination of my employment ….

25.    The Agreement's definition of "P.C. Connection" or the "Company" includes GovConnection. The Agreement specifically prohibits Mereos from copying or removing any of

the Company's confidential documents. In particular Paragraph 2.2 of the Agreement states in relevant part: "Except as required for the proper performance of my regular duties for PC Connection or as expressly authorized in writing in advance by the Company, I will not copy any Documents or remove any Documents or copies or derivatives thereof from the premises of the Company."

26. The Agreement also requires Mereos to return all of the Company's confidential information and other property at the end of his employment. In particular Paragraph 2.2 states in relevant part: "I will safeguard and return to the Company immediately upon termination of my employment, and/or at such other times as may be specified by the Company, all Documents and other property of the Company…"

27. Further, the Agreement expressly provides for the Company's right to injunctive relief in the event of a breach of the Agreement by Mereos. The Agreement also provides that the Company is entitled to its attorneys' fees incurred in securing any relief due to a breach of the Agreement. Specifically, Paragraph 4.6 states in relevant part: "I also acknowledge and agree that, were I to breach any of the provisions of this Agreement, the harm to the Company would be irreparable. I therefore agree that, in the event of such a breach or threatened breach, the Company shall, in addition to any other remedies available to it, have the right to obtain preliminary and permanent injunctive relief against any such breach or threatened breach without having to post a bond, and will additionally be entitled to an award of attorneys' fees incurred in connection with securing any relief hereunder."

**D.    Mereos' Voluntary Resignation**

28. Mereos voluntarily resigned from his employment on February 17, 2017. On the morning of that date, he sent an email to GovConnection informing it of his resignation.

29. Mereos participated in an exit interview on February 17, 2017. During his exit interview, Mereos reaffirmed the restrictions imposed by Paragraph 4 of his Agreement and that he had complied with all the terms of the Agreement, including that he had returned all of GovConnection's property. A copy of this certification signed by Mereos is attached as <u>Exhibit B</u>.

30. During his exit interview, Mereos informed GovConnection that he would be working for his uncle in a property management company.

### E. <u>Plaintiffs Discover Mereos' Wholesale Misappropriation Of The Company's Confidential Information</u>

31. After Mereos' employment ended, the Company discovered that, unbeknownst to it, in the days leading up to his resignation Mereos had forwarded several hundred emails and other documents from his Gov Connection email account to his personal email account. Mereos' forwarding of confidential and proprietary information to his personal email account violated Mereos' obligations pursuant to the Agreement and was contrary to training the Company had provided to Mereos on this very issue. Further, there is no lawful business purpose for Mereos to maintain these emails on his unsecured personal email account outside of the Company's secured firewalls. And, while outside of the office, Mereos was able to access his GovConnection email and certain shared drives remotely via a GovConnection-authorized security technology, negating any reason to expose GovConnection information to an unsecure environment.

32. Because of the sheer volume of information taken by Mereos, the Company has not yet completed a full review of the emails and documents that Mereos forwarded to his personal email account. However, based on a diligent review to date, the Company has discovered that Mereos forwarded hundreds of emails, the majority of which contain attachments as well, to his personal email account in the days leading up to his resignation. Some of these emails contain the

Company's most sensitive information concerning its customers and their licensing agreements. Upon information and belief, Mereos had not previously forwarded email to a personal email account prior to the time period leading to his resignation from employment.

33. Illustrative examples of the information and documents misappropriated by Mereos include the following:

   a. Lists of GovConnection's customers with detailed contact information;

   b. Login information to secure portals for the transfer of information between GovConnection and its clients, including a link to the secure portals, username, and password information;

   c. Email communications with customers containing information regarding license renewals;

   d. Spreadsheets containing detailed information, including among other things, products purchased by customers, prices, costs, margins, quotes, delivery instructions, and contact information; and

   e. Spreadsheets containing detailed information regarding customer purchases, including among other things expiration date of licenses, GovConnection's priority for such licenses, GovConnection's determination of probability of renewing such licenses, prices, margin costs, margin prices, and contact information for customers (with nicknames).

34. The information and documents misappropriated by Mereos provides a detailed roadmap for a competitor to usurp GovConnection's customers. For example, the misappropriated information includes detailed information regarding GovConnection's customers, the products and licenses purchased by those customers, the prices of those products and licenses, GovConnection's margins for those products and licenses, and the renewal dates for such licenses. In other words, the information misappropriated by Mereos includes all of the information that GovConnection has compiled over years of service and investment in its CRM database, CallBack, that would be necessary to timely undercut GovConnection's sales efforts. This highly sensitive information is not only critically important because of its content, but in many instances it is particularly time-

sensitive as it relates to licenses that will imminently be ready for renewal. If this information were to be disclosed to its competitors at this critical juncture, such disclosure could have an even greater harmful impact on GovConnection's ability to effectively and competitively market its products and licenses, because competitors could unfairly utilize this time-sensitive information by taking advantage of GovConnection's research and technology investments in order to target GovConnection's customers that have an imminent renewal.

35. If GovConnection's competitors in the highly competitive government contract bidding industry were able to review this information, such competitors would be placed at a distinct and unfair advantage to GovConnection in the government bidding marketplace. The disclosure of the highly sensitive information misappropriated by Mereos could effectively negate the potential benefits arising from GovConnection's large investment in its sales process, including but not limited to its employee training, technical support for the sales process, and marketing information purchased from third parties. The misappropriated confidential information is highly valuable and, if disclosed to one of GovConnection's competitors, could be used to reduce GovConnection's market share and coopt numerous potential business opportunities from GovConnection, which could result in millions of dollars of lost revenue for the Company. Further, in part because the Company is a public company, if the disclosure became public, then it could cause significant but indeterminate harm to the Company's reputation and stock value. The Company would need to make significant expenditures to begin to remediate the harm caused by such a disclosure by Mereos, including but not limited to dedicating resources to investor relations in connection with such a disclosure, and actively communicating with government agencies concerning any information about them that may be included as part of the unlawful disclosure.

36. The Company puts in place policies to protect its information and also provides regular training to employees, including Mereos, regarding the importance of maintaining confidentiality. Mereos' conduct in forwarding GovConnection's confidential information to an unsecure personal email account violated GovConnection's policies. So long as Mereos remains in possession of GovConnection's confidential files, in violation of his Agreement with the Company, the Company remains in imminent danger of suffering irreparable harm to its operations and reputation.

37. As of the date of this filing, Mereos has not returned any of the misappropriated confidential information.

## COUNT ONE
### (Injunctive Relief)

38. The Company re-alleges as if fully set forth herein the allegations contained in paragraphs 1 to 37 above.

39. By virtue of the conduct described above, Mereos has, among other things, violated the express terms of the Agreement, the common law, MUTSA, and DTSA, and has caused and/or will inevitably cause irreparable harm to the Company.

40. As a direct and proximate result of Mereos' breach of the Agreement and his other wrongful conduct, including his violation of statutory and common law, the Company has been injured and will continue to be injured through the harm to its operations and reputation.

41. The Company's injuries cannot be fully quantified, and it has suffered and will continue to suffer irreparable harm due to Mereos' actions.

42. The Company has no adequate remedy at law, and the balance of hardships favors entry of a temporary restraining order and preliminary injunction against Mereos.

43. The Company has important and legitimate protectable interests in enforcing the terms of the Agreement against Mereos and protecting from disclosure the information Mereos misappropriated.

44. Pursuant to the Agreement, common law, MUTSA, and DTSA, the Company is entitled to a temporary restraining order and preliminary injunctive relief to safeguard actual or threatened misappropriation of confidential information.

45. Further, pursuant to Paragraph 4.6 of the Agreement, the Company is entitled to enforce the terms of the Agreement through the injunctive relief requested in this action.

46. Mereos' actions as described above have caused and, unless restrained, will continue to cause the Company severe, immediate, and irreparable injury for which the Company has no adequate remedy at law.

## COUNT TWO
### (Breach of Contract)

47. The Company re-alleges as if fully set forth herein the allegations contained in paragraphs 1 to 46 above.

48. Mereos entered into the Agreement, as described above, for good consideration.

49. The Agreement is an enforceable contract between the Company and Mereos.

50. Mereos has materially breached the Agreement by misappropriating the Company's confidential information, and by keeping the Company's information after his employment with the Company ended.

51. The Company may learn of additional breaches of contract by Mereos during discovery and reserves its rights to recover for any additional breach of the Agreement by Mereos.

52. Mereos' breach of the Agreement was and is a substantial factor in directly and proximately causing damages and irreparable harm to the Company. The amount of damages

cannot reasonably be ascertained at present but will exceed $75,000. The Company has been and continues to be irreparably harmed by Mereos' actions.

53. Unless restrained by this Court, Mereos will continue his unlawful actions and the Company will continue to be irreparably harmed.

54. The Company will not have an adequate remedy at law for the harm and damage which Mereos' breach of his Agreement will cause and is entitled to a preliminary and permanent injunction, enjoining Mereos from further unlawful acts.

55. Pursuant to the Agreement, the Company is also entitled to its attorneys' fees expended to enforce the Agreement.

## COUNT THREE
### (Violation Of Maryland Uniform Trade Secret Act)

56. The Company re-alleges as if fully set forth herein the allegations contained in paragraphs 1 to 55 above.

57. The Company has certain confidential and proprietary information that constitute its trade secrets within the meaning of MUTSA, Md. Code Ann., Comm. Law, § 11-1201, *et seq*. For example, information regarding the Company's profit margins, license expiration dates, and client and consultant information all derive economic value from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from its disclosure or use.

58. At all relevant times, the Company has taken reasonable and necessary measures to safeguard the secrecy and confidentiality of its trade secrets, which are valuable and lucrative assets of the Company.

59. Mereos was given access to the Company's trade secrets under circumstances giving rise to a duty to maintain their secrecy and to limit their use. Such trade secrets at all times were and still are the property of the Company.

60. By signing the Agreement, Mereos knew that he had a duty to protect such trade secret and proprietary information and use them only for the benefit of the Company or as authorized by the Company.

61. By engaging in the conduct described throughout this Complaint, Mereos has misappropriated the Company's trade secrets, without the consent of the Company, to the detriment of the Company, and for his own commercial advantage, in violation of MUTSA. Such misappropriation occurred when Mereos, among other actions, emailed the Company's confidential client information to his personal email account without the Company's authorization.

62. In addition to misappropriating the Company's trade secrets, Mereos has used and/or will surely use such trade secrets without the Company's consent and for his own benefit, in violation of the MUTSA.

63. Such conduct was wanton, willful, malicious, and in conscious disregard of the Company's rights.

64. Such actions as described above have caused and, unless restrained, will continue to cause the Company severe, immediate, and irreparable injury for which the Company has no adequate remedy at law.

**COUNT FOUR**
**(Breach of Fiduciary Duty)**

65. The Company re-alleges as if fully set forth herein the allegations contained in paragraphs 1 to 64 above.

66. Mereos, as an employee of the Company, had and still has fiduciary duties to the Company, including the duty of loyalty, in all matters connected with his employment with the Company, including the protection (both during and after his employment) of all confidential and proprietary information connected with and gained through his employment. Likewise, Mereos had the duty to act in the Company's best interests while employed by the Company.

67. By the conduct alleged herein, Mereos has intentionally and willfully breached his fiduciary duties to the Company by surreptitiously misappropriating the Company's confidential, proprietary, and trade secret information while employed at the Company in order to establish business opportunities purely for his own benefit or the benefit of his subsequent employer.

68. Mereos' actions as described above have caused and, unless restrained, will continue to cause the Company severe, immediate, and irreparable injury for which the Company has no adequate remedy at law.

## COUNT FIVE
### (Violation of Defend Trade Secrets Act)

69. The Company re-alleges as if fully set forth herein the allegations contained in paragraphs 1 to 68 above.

70. The Company is the owner of valuable trade secrets related to products and services used in, or intended for use in, interstate or foreign commerce.

71. Mereos has improperly misappropriated the Company's trade secrets through the improper use of such secrets.

72. Mereos disregarded the terms of the Agreement, thereby belying any intention to honor the confidentiality of the Company's trade secrets. Any disclosure or use of the Company's trade secrets by Mereos was not and will not be with the Company's consent and violates the DTSA.

73. The Company has taken reasonable efforts to maintain the confidentiality of its trade secrets.

74. The Company also derives independent economic value from its trade secrets not being generally known to, and not being readily ascertainable through proper means by, other persons who could obtain economic value from the Company's trade secrets.

75. Mereos acquired the Company's trade secrets under circumstances giving rise to a duty to maintain their secrecy and limit their use.

76. The use and disclosure of the Company's trade secrets by Mereos may already have damaged the Company, and if Mereos is not enjoined the Company will be further damaged by, for example, actually being deprived of, or the threat of being deprived of, the economic value generated by not having its trade secrets known to others. Moreover, Mereos' violations of the DTSA reflect his disregard of the Company's rights under the DTSA and evidence his intent to continue to violate the Company's statutory rights.

77. Mereos' threatened and/or actual use and disclosure of the Company's trade secrets constitute misappropriations under the DTSA.

78. The violations of the DTSA identified above may have caused, and threaten to cause, irreparable harm to the Company for which it has no adequate remedy at law.

79. Mereos' actual and/or threatened use and disclosure of the Company's trade secrets is malicious and willful.

WHEREFORE, Plaintiffs respectfully request the following relief be entered against Mereos:

A. A temporary restraining order and preliminary injunction;

B. Compensatory damages in an amount to be determined at trial;

C. Punitive damages in an amount to be determined at trial;

D. Statutory damages, including attorney's fees, costs, and interest, pursuant to the Maryland Uniform Trade Secrets Act;

E. Contractual damages including attorney's fees, expenses, and costs incurred by Plaintiffs in prosecuting this action;

F. Prejudgment interest; and

G. Such other and further relief that this Court deems just and proper.

Respectfully submitted,

PC CONNECTION, INC. and
GOVCONNECTION, INC.

By their attorneys

*/s/ Joseph E. Schuler*
Joseph E. Schuler (Bar No. 04360)
Jeremy S. Schneider
Erik J. Winton (*Pro Hac Vice* forthcoming)
Jackson Lewis, P.C.
10701 Parkridge Blvd., Suite 300
Reston, Virginia 20191
Telephone: (703) 483-8300
Fax: (703) 483-8301
schulerj@jacksonlewis.com
Jeremy.Schneider@jacksonlewis.com
wintone@jacksonlewis.com

Dated: March 6, 2017

## **VERIFICATION**

Dick Saporito, under penalty of perjury, verifies that he is the Senior VP Human Resources of PC Connection, Inc., and that the facts in this Verified Complaint (except those facts based upon information and belief) are true and accurate to the best of his knowledge, or true to the best of his information and belief if compiled by others.

/s/* _____ x

Sworn to before me and subscribed in my presence this 3th day of March 2017.

/s/ _____
Notary Public

*Counsel hereby certifies that he or she has a signed copy of the foregoing document available for inspection at any time by the court or a party to this action.



KEVIN S BARRY
Notary Public, New Hampshire
My Commission Expires Jun 4, 2019



19